126 So.2d 789 (1960)
William P. HONEYCUTT, Individually, et al., Plaintiff-Appellee,
v.
AMERICAN GENERAL INSURANCE COMPANY, Defendant-Appellant.
Nos. 5132, On Rehearing No. 2357.
Court of Appeal of Louisiana, First Circuit.
December 19, 1960.
Rehearing Denied February 20, 1961.
*790 Kennon, White & Odom, Baton Rouge, for American General Ins. Co., defendant-appellant.
Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, Kilbourne & Dart, St. Francisville, for Wm. P. Honeycutt, plaintiff and third-party defendant-appellee.
Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for Southern Farm Bureau Cas. Co., third-party defendant-appellee.
Before ELLIS, LOTTINGER, JONES, HERGET, and LANDRY, JJ.
ELLIS, Judge.
In deciding the case of Palmer et al. v. American General Insurance Company, La. App., 126 So.2d 777, we have set out the facts and circumstances by which this suit arose and the only question presented herein is as to quantum.
At the time of the accident, Robert Honeycutt was a little over three months old; at the time of the trial, he was a little over nine months old. The child was being held by his mother on the front seat of the Honeycutt vehicle, and when the collision occurred, apparently the child's head struck the dashboard.
On the date of the accident and prior to the accident, this child had been taken to Dr. Joseph R. Hirsch, a pediatrician of Baton Rouge, for an examination incident to an ear condition suffered by the child. Apparently both of the child's eardrums had been inflamed, and Dr. Hirsch lanced both eardrums and prescribed a drug, demerol, to relieve the child's pain.
This accident happened at about 2:30 P.M. Dr. Hirsch examined the child at the Baton Rouge General Hospital, had x-rays taken, and diagnosed the child's injury as a linear fracture of the parietal bones on both sides of the skull. No x-rays were introduced in evidence. Dr. Hirsch requested Dr. Edelman, a neurosurgeon of Baton Rouge, to examine the child for possible brain damage, a determination of which was not within Dr. Hirsch's professional practice. Dr. Hirsch testified that his examination on the afternoon of the accident revealed that both eye pupils were small, but that the child had received demerol earlier, and this was probably the cause of the small pupils; that the lungs were clear and that there was no respiratory difficulty; that abdominal examination was negative, the liver, spleen and kidneys not enlarged; that neurological examination was negative. The child was admitted to the hospital, stayed four days during which he was observed for neurological changes. There were no signs of regression and in fact the child did nicely, and was discharged. Dr. Hirsch further testified that the fracture had completely healed, which was confirmed by x-rays taken one week before the trial.
Dr. Edelman, who examined the child at about 5:30 in the afternoon of the day of the accident, testified as follows:
"Q. What was the child's condition when you saw him, Doctor? A. Well, the information obtained both from Dr. Hirsch and from the mother was that the child had been in Dr. Hirsch's office earlier on that date because of an ear infection and that Dr. Hirsch had opened the child's ears and had given *791 the patient some demerol for relief of pain. Following this, the patient was injured in an automobile accident, and according to the mother the baby was thrown against the dash-board of the car. My examination at that time revealed that the baby appeared to be a normal infant of about 4 months of age and that there was some swelling over the right parietal area of the skull, as well as the occipital area. That is, the side and back parts of the head, on the right side. This area seemed tender when I examined it and touched it, because the baby began to cry when this area was palpated, or when I felt this area. There was also some discoloration and what we describe medically as ecchymosis. Lay people call this a bruise or a change in color that occurs with a bruise. And, I felt that there was a hematoma, or a blood clot, beneath the scalp in this area. I could not feel any depression in the bone, however. Now, the child's neck was not stiff. What we call nuchal rigidity is an indication of bleeding in the subarachnoid space, that is, the space around the brain. The child's neck was not stiff at the time I examined him. I found that the pupils were equal and that the baby was moving both arms and both legs. In other words, it was not paralyzed in the arms or legs. And, the baby seemed to be disturbed by the fact that he was being examined, which indicated that the child was conscious, and not unconscious from the injury. Now, those were essentially the points in the examination. There was no bleeding from the child's ears, and no other evidence that I could find on the head of an injury. Now, I reviewed the x-rays in the x-ray department of the Baton Rouge General Hospital and it was my impression that there was a long linear fracture in the right parietal area that extended into the occupital area but I did not feel that there was any evidence of depression, or these bone fragments being pushed into the brain. This was a simple crack, like a crack in the shell of an egg. It was my recommendation to Dr. Hirsch that the child be watched carefully for the next few days and it was my feeling at that time that no surgical treatment was indicated for the child. And, Dr. Hirsch asked me to follow the child along with him, which I did. Now, the child remained in the hospital until August 23 of 1959 and I can't remember exactly how many times I saw the baby, but I saw the baby at least daily and on occasions twice a day I am sure because I usually make my rounds twice daily. And, when the child was discharged on August 23, the child was in good condition."
Unfortunately, medical science has not advanced to a stage where the full effects of an injury to the head of a small child can be fully determined. According to both Dr. Hirsch and Dr. Edelman, it will take at least two years to determine the full effects of the injury. Both doctors testified that the child must be kept under medical observation for a period of two years to determine whether or not subderal hematoma and epileptic seizures might develop.
This Court has stated many times that an award for damages for personal injuries is of necessity somewhat arbitrary and varies greatly with the facts and circumstances of each case. However, some uniformity must be maintained in the jurisprudence and awards cannot be made on possibilities.
Taking into consideration the nature of the injuries suffered, the obvious pain and suffering endured by this child, and considering the decreased purchasing power of the dollar we feel that an award of $7,500 will do substantial justice as between the parties. See Theriot v. Gianelloni, La. App. 1 Cir., 1960, 121 So.2d 275. See, also, Wilson v. Williams, La.App. 1 Cir., 1955, 82 So.2d 71.
Counsel for appellant, American General Insurance Co., contends that it was *792 error for the lower court to award $100 to William P. Honeycutt for future medical expenses for the minor, Robert Honeycutt. Suffice it to say that the necessity of future medical observation was definitely established by both Dr. Hirsch and Dr. Edelman and we feel that $100 is not excessive under the circumstances.
The lower court awarded Mrs. Emily Odom Honeycutt $3,000 and all medical expenses for mental pain and anguish, shock and anxiety over her child, Robert Honeycutt, laceration of her elbow and a sprained ankle which prevented her from walking unassisted for two weeks and continued to cause her discomfort at the date of the trialsome seven months after the injury. We have examined the record and feel that the amount awarded is not manifestly excessive so as to require a reduction as a matter of law.
William P. Honeycutt was awarded $500 plus all medical expenses by the lower court for contusions to his chest, bruises and generally being shaken up. He suffered some pain in his chest about three or four weeks. Under the circumstances, we cannot say that as a matter of law the award of the trial judge is excessive.
Counsel for American General contends as he did in the companion case of Wilcox v. American General Insurance Company et al., 126 So.2d 785, that the fees for experts were excessive and should be reduced.
Dr. Hirsch, a specialist in pediatrics, had to drive from Baton Rouge to St. Francisville and testified for 40 minutes. Under the circumstances, we feel that the fee of $200 should be reduced to $150.
Dr. Edelman, a specialist in neurosurgery, had to drive from Baton Rouge to St. Francisville and testified for about 15 minutes. We feel that the fee of $200 is excessive and should be reduced to $125.
Dr. Woodford, a general practitioner, had to drive from Baton Rouge to St. Francisville and testified for ten minutes. Under the circumstances we feel that the fee of $200 should be reduced to $100.
Dr. Gould, a general practitioner, resided in St. Francisville and testified for 37 minutes. We feel that the fee of $100 should be reduced to $35.
Dr. Martin, a general practitioner, had to drive from Zachary to St. Francisville and testified for seven minutes. Under the circumstances we feel that the fee of $150 should be reduced to $50.
For the above and foregoing reasons, it is ordered, adjudged and decreed that the judgment of the District Court is amended by reducing the award to William P. Honeycutt for the use and benefit of his minor son, Robert Honeycutt, from $20,000 plus all medical expenses to $7,500 plus all medical expenses.
It is further ordered, adjudged and decreed that the judgment of the District Court awarding William P. Honeycutt for the use and benefit of his minor son, Robert Honeycutt, $100 for future medical bills be affirmed.
It is further ordered, adjudged and decreed that the judgment of the District Court awarding $3,000 plus all medical expenses to Emily Odom Honeycutt for personal injuries, pain and suffering be affirmed.
It is further ordered, adjudged and decreed that the judgment of the District Court awarding William P. Honeycutt $500 for personal injuries, pain and suffering be affirmed.
It is further ordered, adjudged and decreed that the judgment of the District Court is amended by reducing the expert fees taxed as costs for Dr. Hirsch, $150; Dr. Edelman, $125; Dr. Woodford, $100; Dr. Gould, $35; and Dr. Martin, $50.
Judgment amended and as amended affirmed.

*793 On Application for Rehearing
PER CURIAM.
Defendant, American General Insurance Company, has applied for a rehearing in connection with an award for damages of $3,000 to Mrs. Emily Odom Honeycutt for mental pain and anguish, shock and anxiety over her child, Robert Honeycutt, who was injured in the accident, as well as the laceration of her elbow and a sprained ankle.
It is set forth in the application that, as a matter of law, mental pain and anguish, shock and anxiety by a parent for injuries to a child is not a proper element for damages in Louisiana and that the award to Mrs. Honeycutt for a laceration of her elbow and a sprained ankle is excessive and should be reduced.
In cases other than death, under the law of Louisiana, a parent cannot recover for his own mental pain and anguish, shock and anxiety for the personal injuries of a minor child. This was the holding of this court in the case of Hughes v. Gill, La.App., 41 So.2d 536, citing as authority therefor Davies v. Consolidated Underwriters, La. App., 14 So.2d 494, and Seligman v. Holladay, La.App., 154 So. 481.
In making this award originally, we had considered $1,500 as the amount recoverable by Mrs. Honeycutt for the mental pain and anxiety, shock and anxiety, etc. and $1,500 for her personal injuries, consisting of the laceration of her elbow and her sprained ankle. The award to Mrs. Honeycutt will be reduced in the amount of $1,500. We believe the award of $1,500 for the laceration of her elbow and the sprained ankle to be proper for, as pointed out in the original opinion, the sprained ankle was giving her trouble and causing her discomfort at the time of the trial, which was some seven months after the injury.
Accordingly, for the reasons stated, the application for a rehearing on behalf of defendant insurer is denied and the award to Mrs. Emily Odom Honeycutt is reduced to $1,500.